2002 WY 63

**David O'BRIEN, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00–135.

Supreme Court of Wyoming.

April 24, 2002.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos, Representing Appellant.

Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Tammy L. Farmer, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Farmer, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] In this appeal, we primarily consider the instruction a jury should receive when considering whether the elements of aggravated assault and battery are met. Appellant David Wayne O'Brien contends that the trial court improperly defined the term "recklessly under circumstances manifesting extreme indifference to the value of human life." We agree that this language requires that the State prove that a defendant's conduct exhibited more than recklessness, but we determine that sufficient evidence supported O'Brien's conviction on one count of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i). On this issue and others presented by O'Brien, we find no reversible error and affirm his conviction.

## ISSUES

[¶ 2] The parties agree that the following issues are presented for our review:

I. Whether plain error occurred when the jury was erroneously instructed regarding the recklessly under circumstances manifesting extreme indifference to the value of human life component of aggravated assault and battery?

II. Whether there was insufficient evidence to convict O'Brien of aggravated assault under W.S. § 6–2–502(a)(i)?

III. Whether Nurse Krininger's testimony eliciting statements made by Mr. Fos-

ter was improper hearsay under W.R.E. 803(4)?

IV. Whether prosecutorial misconduct occurred during the State's closing argument and in the State's case in chief?

## FACTS

[¶ 3] On the evening of August 21, 1999, twenty-two year old Jordan Foster reported to two friends that, as he drove around in Gillette, Wyoming, he had been "bothered" by some people in a red Ford Probe. Foster was "cruising," or driving around town, which is an activity many young people in Gillette engage in to meet with friends and visit. Later, Foster was a passenger in a pickup truck driven by his friend, Chris Weber, age 18. Weber's girlfriend, Amanda Jameson, age 17, was also a passenger. The three drove around Gillette and soon encountered the red Ford Probe, which was driven by Shawn Lewis, age 20, with Shelly Lane, age 16, occupying the front seat passenger side, and O'Brien seated in the back. This party was also cruising. O'Brien is Lewis' uncle and is 30 years old. As the two vehicles drove next to each other, the Probe's occupants began calling out insults to the occupants of the pickup truck. The Probe parked in a bank parking lot, and Foster and his friends also pulled into the lot and parked. Weber testified that Foster's demeanor was curious and not angry.

[¶ 4] O'Brien, however, emerged from the Probe's back seat appearing angry and stating that he hated cowboys. Weber testified that O'Brien had a bigger build and appeared much older. Foster got out of the pickup truck and walked over to O'Brien to see if there was a problem. O'Brien placed a beer that he had been drinking on the hood of the pickup truck and asked if Foster was scared of him. After Foster asked if he should be, O'Brien punched Foster near the left eye knocking him to the ground. Foster reported that he had been knocked unconscious, and eyewitnesses testified that he did not fight back. Falling on him, O'Brien hit Fos-

ter in the head "pretty quick and hard" and about ten or eleven times. O'Brien then stood up, jumped up and down and said, "I am the greatest," repeatedly.

[¶ 5] Lane apologized to Jameson, and all three Probe occupants returned to it and left. Weber and Jameson placed Foster in their pickup truck and drove him to the Campbell County Memorial Hospital emergency room in Gillette. An emergency room nurse, Patty Krininger, testified that Foster was pale, nauseated, in need of stitches, and had a broken jaw, a combination that could cause him to stop breathing. Foster was transported by ambulance to the hospital in Casper to undergo surgery. Dr. Donald Greer, a plastic surgeon, observed a severely fractured and displaced jaw, a condylar fracture, a concussion, and a laceration on the forehead. He testified that the broken jaw did not allow Foster to control his tongue, which could fall back and block his airway. A permanent titanium plate was inserted across Foster's fractured jawbone and wires and bands used to set the jaw.

[¶ 6] Afterwards, Foster's memory of the incident was impaired, and he could not identify O'Brien. Lane identified O'Brien to police. O'Brien was charged with aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i), convicted by a jury, and sentenced to three to eight years. This appeal followed.

## DISCUSSION

*Jury Instructions*

[¶ 7] In his first issue, O'Brien contends that the trial court committed plain error when it improperly provided the jury with the definition of the term "recklessly" rather than providing the jury with a definition of the term "recklessly under circumstances manifesting extreme indifference to the value of human life" found in Wyo. Stat. Ann. § 6–2–502(a)(i).[1] O'Brien contends that this term required the jury to find a degree of culpability beyond mere recklessness, and the in-

---

1. Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2001) states:

   (a) A person is guilty of aggravated assault and battery if he:

   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

struction defining the term "reckless" was an inaccurate statement of the law and misleading.

[¶ 8] No objection to the instruction was made at trial; and under a plain error review, O'Brien must show that the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right. *Taylor v. State*, 2001 WY 13, ¶ 16, 17 P.3d 715, ¶ 16 (Wyo.2001). Prejudicial error must be demonstrated by appellant, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Collins v. State*, 854 P.2d 688, 700 (Wyo.1993); *Lowseth v. State*, 875 P.2d 725, 729 (Wyo.1994). Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial or where evidence of the defendant's guilt is overwhelming. *Miller v. State*, 904 P.2d 344, 349 (Wyo.1995).

[¶ 9] The jury received the following instructions on the elements of aggravated assault:

### Instruction No. 4

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. The events occurred on or about August 22, 1999.

2. They occurred in Campbell County, Wyoming;

3. The Defendant, David Wayne O'Brien caused serious bodily injury to Jordan Foster; and

4. Intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has not been proven beyond a reasonable doubt, then you should find the defendant not guilty.

### Instruction No. 5

"Serious bodily injury" means bodily injury which creates substantial risk of death or which causes severe disfigurement or impairment of the function of any bodily member or organ.

### Instruction No. 6

An act is "knowingly" or "intentionally" done if it is done voluntarily and purposely; not accidentally, because of a mistake or for some other innocent reason. The State must prove that the defendant's *acts* were done knowingly or intentionally, but the State is not required to prove that the defendant intended the *consequences* which may have resulted from the doing of those acts.

Whether acts were knowingly or intentionally done must be determined or inferred from all of the evidence in the case. In making that finding you may consider the acts themselves, the manner in which they were done, the means used, and all the circumstances surrounding the acts.

### Instruction No. 7

Recklessly is different from knowingly or intentionally. Recklessness does not require proof of an intent or purpose to do harm. It is, instead, an utter unconcern about the consequences of one's acts. Recklessness is rash and careless conduct. A person is reckless when he consciously disregards a substantial and unjustified risk that his acts will cause serious harm. The risk must be of such a nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe under the circumstances.

[¶ 10] The State contends that a clear and unequivocal rule of law was not violated because it is not necessary to define a term which is used in the sense of its ordinary meaning, has no distinguishable technical legal meaning, and when no specific statutory definition of the term exists. The State as-

serts that it is self-evident that more than recklessness is required, and the jury was properly instructed in Instruction No. 4 to find not only that O'Brien acted recklessly but that he did so "under circumstances manifesting extreme indifference to the value of human life."

[¶ 11] In this case, to determine whether the jury was properly instructed, it is necessary to interpret the meaning of the phrase "recklessly under circumstances manifesting extreme indifference to the value of human life." "The accuracy of an instruction to the jury is purely a question of law which we review *de novo*. If the instruction fails to correctly state the law, reversible error exists." *Paugh v. State*, 9 P.3d 973, 975–76 (Wyo.2000).

[¶ 12] The aggravated assault and battery statute is the only Wyoming statute using the term "recklessly under circumstances manifesting extreme indifference to the value of human life," and the Wyoming legislature has not defined that term. Before 1982, the offense of aggravated assault and battery without a dangerous weapon carried a maximum one year county jail term when one was convicted for "unlawfully and maliciously" inflicting upon another person any "grievous bodily harm." Wyo. Stat. Ann. § 6–4–506 (Michie 1977). In 1982, however, Wyoming enacted a comprehensive criminal code based upon the Model Penal Code, and the aggravated assault and battery statute in its present form was passed using the term at issue in this case. That term was derived from the Model Penal Code. Theodore E. Lauer, *Goodbye 3–Card Monte: The Wyoming Criminal Code of 1982*, 19 Land & Water L.Rev. 107, 132 (1984). Before it was placed in the statute, the term had not been used in Wyoming.

[¶ 13] In many other states, the "extreme indifference" language was preceded by the "depraved heart" and "implied malice" terms to distinguish between homicides such as second degree murder and involuntary manslaughter, and each term was recognized to mean that it contemplated circumstances which make a defendant more blameworthy than recklessness alone. *State v. Boone*, 294 Or. 630, 661 P.2d 917, 920–21 (1983). Wyo-

ming, however, has no previous decisions on the meaning of "extreme indifference" or "depraved heart." Second degree murder was established when a defendant killed "purposely and maliciously, but without premeditation;" involuntary manslaughter existed when a defendant killed by any "culpable neglect or criminal carelessness." Wyo. Stat. Ann. §§ 6–4–104; 6–4–107 (Michie 1977). In addressing other issues, it was noted that Wyoming juries were instructed that "culpable neglect" and "criminal carelessness," were defined to mean conduct of a "gross or flagrant character, such as would show wantonness or recklessness, and would demonstrate a reckless disregard of human life or the safety of others, or an indifference to consequences equivalent to criminal intent." *State v. Sodergren*, 686 P.2d 521, 529 (Wyo. 1984) (Thomas, J., specially concurring). *Sodergren* declared that the distinction between "culpable neglect or criminal carelessness," "reckless disregard for the safety of others," "conscious disregard for the safety of others," "gross negligence," "disregard of consequences which may ensue," "wantonness," "indifference to the rights of others that is equivalent to criminal intent," "evincing a reckless disregard of human life or bodily injury," is de minimus for the purpose of defining a criminal act. *Id.* at 528. This precedent clarifies that this Court interpreted the term "reckless" when used in a homicide as synonymous with the state of mind necessary to convict for involuntary manslaughter, *i.e.*, conduct equivalent to criminal intent. *Id.*

[¶ 14] In 1982, the Legislature revamped Wyoming's assault and battery provisions and provided that bodily injury caused by "recklessness" sufficed for a misdemeanor conviction. The definition for the term "recklessness" appears to have been borrowed from the Model Penal Code. Lauer, *supra*, at 131. The Model Penal Code distinguishes between "reckless" and "recklessly under circumstances manifesting extreme indifference to the value of human life." The Legislature appears to have revised its assault and battery statutory scheme by adopting the language used for these offenses in the Model Penal Code rather than attempt-

ing to follow definitions provided by our judicial decision, and we therefore examine the Model Penal Code's definitions of these terms to ascertain legislative intent.

[¶ 15] "Recklessly" is defined by the Model Penal Code in basically the same terms as it is in Wyo. Stat. Ann. § 6–1–104(a)(ix) (LexisNexis 2001): [2]

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Model Penal Code, § 2.02(2)(c), at 226 (Official draft 1962).

[¶ 16] In discussing the term "recklessly under circumstances manifesting extreme indifference to the value of human life," the Commentary to the Model Penal Code states that this is a "special character" of recklessness required to elevate assault or battery to aggravated assault or battery and is adopted from the definition of murder found in Section 210.2(1)(b) of the Code. § 211.1(2)(a) cmt. 4, at 189. That discussion states that criminal homicide constitutes murder when it is committed "recklessly under circumstances manifesting extreme indifference to the value of human life." § 210.2(1)(b) cmt. 4, at 21. That Commentary goes on to state that this term is intended to reflect the judgment that there is a kind of reckless homicide that cannot fairly be distinguished in grading terms from homicides committed purposely or knowingly. *Id.* Stating that conduct amounting to a "gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation" is "ordinary recklessness" that would justify a

manslaughter conviction, the Commentary observes that

> [i]n a prosecution for murder, however, the Code calls for the further judgment whether the actor's conscious disregard of the risk, under the circumstances, manifests extreme indifference to the value of human life. The significance of purpose or knowledge as a standard of culpability is that, cases of provocation or other mitigation apart, purposeful or knowing homicide demonstrates precisely such indifference to the value of human life. Whether recklessness is so extreme that it demonstrates similar indifference is not a question, it is submitted, that can be further clarified. It must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder and that less extreme recklessness should be punished as manslaughter.

*Id.* at 21–22. The Commentary then notes that this type of extreme recklessness, formerly known as the so-called "depraved heart" conduct that allowed murder convictions when a defendant killed his friend playing Russian roulette, killed by firing into occupied homes, or killed when he intended to shoot over the head of the victim but missed, would permit a jury to reach the same conclusion under the Code's language. *Id.* at 22–23. It warns, however, that negligent creation of risk of death, regardless of its extravagance or unjustification, cannot be punished as murder. Under Section 210.2(1)(b), the actor must perceive and consciously disregard the risk of death to another before the conclusion of extreme recklessness can be drawn. *Id.* at 27–28.

[¶ 17] The Commentaries addressing aggravated assault and battery state that this special character of recklessness, or extreme recklessness, is designed to more severely punish battery where the defendant's state of mind would have justified a murder conviction had his victim not fortuitously lived. § 211.1(2)(a) cmt. 4, at 189. By adopt-

---

**2.** " 'Recklessly' is defined as the following conduct: A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]"

ing the Model Penal Code's term, "reckless-ly," to justify a lesser punishment for assault and battery, the Wyoming Legislature plain-ly intended to distinguish between "reckless-ly" and "recklessly under circumstances manifesting extreme indifference to the value of human life" in the same manner as had the Model Penal Code. We, therefore, determine that O'Brien correctly asserts that the jury was not properly instructed when it was pro-vided with the statutory definition of "reck-lessly" without further proper instruction.

[¶ 18] In O'Brien's case, a jury instruc-tion defined recklessness in accordance with the statutory definition which, as we now see, is the "ordinary" recklessness that would warrant a simple battery conviction. The question, thus, is whether the jury was prop-erly instructed when it was provided this definition along with Instruction No. 4 which told the jury that it must find that it was recklessness "under circumstances manifest-ing extreme indifference to the value of hu-man life."

[¶ 19] O'Brien contends that the trial court erred in presenting all three states of mind to the jury without a special verdict instructing them to identify the applicable state of mind. Accordingly, he contends that if his conduct was not extreme recklessness, then the rule of *Bush v. State*, 908 P.2d 963 (Wyo.1995), is invoked. That rule states that the verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. *Id.* at 967.

[¶ 20] The Model Penal Code pro-vides that when recklessness suffices to es-tablish an element, such element also is es-tablished if a person acts purposely or knowingly. § 2.02(5) at 226. The Explanato-ry Note to this Code explains that this rule makes it unnecessary to state in the defini-tion of an offense that the defendant can be convicted if it is proved that he was *more* culpable than the definition of the offense requires. Thus, if the crime can be commit-ted recklessly, it is no less committed if the actor acted purposely. *Id.* at 228. In other words, if the evidence supports finding that a reasonable jury could have concluded that O'Brien intentionally or knowingly caused

serious bodily injury to Jordan Foster, then this special character recklessness is estab-lished. In that respect then, O'Brien is not correct that the trial court should have in-structed on only one state of mind. We hold that it was harmless error for the jury to be instructed with all three states of mind, *i.e.*, intentionally, knowingly, or reck-lessly under circumstances manifesting ex-treme indifference to the value of human life.

[¶ 21] O'Brien asserts that the statutory definition of recklessness should not be given in an aggravated assault and battery jury trial, but the jury should instead be given an instruction defining the term "reckless under circumstances manifesting extreme indifference to the value of life" so that the jury will understand that it is re-quired to determine whether the defendant perceived and consciously disregarded the risk of death to his victim before the conclu-sion of recklessness can be drawn. A Com-mentary to the Code states that "[g]iven the Model Code definition of recklessness, the point involved is put adequately and succinct-ly by asking whether the recklessness rises to the level of 'extreme indifference to the value of human life.' As has been observed, it seems undesirable to suggest a more spe-cific formulation." § 210.2 cmt. 4, at 25. · We hold, therefore, that, in an aggravated as-sault and battery trial, the jury should be given an instruction defining "reckless under circumstances manifesting extreme indiffer-ence to the value of human life" rather than just "reckless" as happened in O'Brien's trial. That definition will provide the statutory def-inition of reckless but must include language explaining that if the jury determines the defendant acted recklessly, the jury must then determine whether that recklessness rose to the level of "extreme indifference to the value of human life." Although this more precise instruction was not given in O'Brien's case, the failure to do so is not plain error because the evidence supports finding that O'Brien intentionally and knowingly seriously injured Jordan Foster.

*Sufficient Evidence*

[¶ 22] In his second issue, O'Brien contends that the evidence was insufficient to

convict him of causing serious bodily injury recklessly under circumstances manifesting extreme indifference to the value of human life. He again points out that the jury's general verdict makes it impossible to determine under which state of mind standard he was convicted, and he examines whether the evidence was sufficient to find that he had acted "recklessly under circumstances manifesting extreme indifference to the value of human life."

[¶ 23] We again point out that the statutory intent behind the language "intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life" is to establish an equivalent state of mind before conviction is justified. O'Brien contends that, although he was reckless in causing the serious bodily injury to Foster, his conduct, while criminal, did not amount to acts that were "only one step short of murder" or the "functional equivalent of a murder in which, for some reason, death fails to occur." O'Brien cites to a series of Pennsylvania cases reversing aggravated assault and battery convictions after finding that the acts were insufficient to convict. In the first, he states that the Pennsylvania Supreme Court found insufficient evidence to support convicting a defendant who ran a red light while driving intoxicated and hit another vehicle resulting in serious bodily injury. *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616, 618 (1995). He next notes that Pennsylvania also reversed a conviction for a defendant who came up behind an officer handcuffing his brother, grabbed the officer by the shirt and pants, picked him up and threw him forward into some nearby concrete steps causing him to fracture his collar bone. *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 502 A.2d 241, 243 (1985). Finally, he provides us with a decision from the Pennsylvania Supreme Court that determined there was insufficient evidence to convict a defendant who had crashed into a bus stand, killing one individual and severely injuring another. That defendant had consumed several beers and become somewhat intoxicated, had then ingested muscle relaxers and driven away at an excessive speed from a party on his way to a bar, rubbed against the curb, left the roadway, crashed into a bus stand and finally smashed into a brick wall leaving no skid marks. The Court ruled that this evidence of recklessness was insufficient to establish the threshold standard for recklessness under circumstances manifesting extreme indifference to the value of human life, and concluded "[w]hile Appellant's actions are clearly criminal, they do not constitute aggravated assault." *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593, 596 (1998). O'Brien notes that, since these decisions, a statute has been enacted that allows for an aggravated assault by vehicle conviction when driving under the influence.

[¶ 24] O'Brien distinguishes our decision in *Trujillo v. State*, 750 P.2d 1334, 1336–38 (Wyo.1988), where this Court found sufficient evidence to convict the appellant of aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(i). In that case, O'Brien notes that the appellant had punched and broken the victim's jaw, but importantly, the evidence revealed that the appellant had been the aggressor in a fight an hour earlier; had ignored then an earlier warning by police officers to depart from the bar and go home; and the appellant was a trained boxer who knew that he could inflict serious injury with his fists. In comparison, O'Brien asserts that the facts in this case demonstrated a fight between two individuals where one bested the other.

[¶ 25] We appreciate O'Brien's contention that aggravated assault is not an appropriate offense to be charged for the average mutual fight between similarly matched combatants. We do find, however, that it is an appropriate offense to be charged under the particular facts of this case. Here, although much older and bigger, O'Brien attacked without provocation another person, viciously beat him when the victim was unconscious and not responding; O'Brien celebrated triumphantly over the body, and then left the scene. These facts show the jury found that O'Brien intentionally acted, and the issue then was whether he had caused serious bodily injury as defined under the statute. The jury was instructed:

"Serious bodily injury" means bodily injury which creates substantial risk of death or which causes severe disfigurement or impairment of the function of any bodily member or organ.

The State contends that Foster was beaten so savagely that his life was endangered, and that the broken jaw was a bodily injury which created a substantial risk of death. In support, it provided medical testimony that it is rare to see a jaw broken at the back of the joint as the result of a blow from a fist, and the broken jaw resulted in trauma that required surgery to prevent Foster's tongue from blocking his airways. The evidence supports the jury's determination that O'Brien acted intentionally and caused serious bodily injury.

*Hearsay*

[¶ 26] During her testimony, Nurse Krininger testified that she could not determine from her examination how Foster had sustained his broken jaw and therefore asked Foster if he had provoked somebody. Defense counsel objected on grounds that it was hearsay and a denial of confrontation. The trial court ruled that the nurse could answer because it was for medical diagnosis. The prosecutor then asked the following:

Q. Now, what did he tell you again about his actions as far as starting a fight?

A. He said he didn't do anything. He said he didn't know why he had been hit.

Q. How many times did he say this? Quite frequently?

A. Yes.

On appeal, O'Brien contends that these questions were asked to establish that the fight was unprovoked, not for purposes of medical treatment or diagnosis, and violated the hearsay rule. The State contends that the testimony was admitted properly under an exception to the hearsay rule, W.R.E. 803(4).

[¶ 27] Our review of rulings by a trial court, admitting or excluding evidence, is premised upon deference to the trial court, and we do not reverse a case because of evidentiary rulings unless an abuse of discretion is demonstrated. *Horton v. State*, 764 P.2d 674, 676–77 (Wyo.1988). "Judicial discretion is a composite of many things, among

which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

[¶ 28] Hearsay evidence generally is excluded by W.R.E. 802, which provides, "[h]earsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court of Wyoming or by statute." The definition of hearsay is found in W.R.E. 801(c): " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Twenty-three specific exceptions to the hearsay rule, together with a catch-all exception, are set forth in W.R.E. 803 which permits testimony on evidence that W.R.E. 802 otherwise would exclude. *Oldman v. State*, 998 P.2d 957, 960–61 (Wyo.2000). Rule 803(4) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(4) *Statements for Purposes of Medical Diagnosis or Treatment.*—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

[¶ 29] We have held that "[s]tatements which attribute fault or causation generally are not relevant to diagnosis or treatment" and are usually inadmissible under W.R.E. 803(4). *Stephens v. State*, 774 P.2d 60, 72 (Wyo.1989). We have determined, however, that this exception permits admitting a child's statement identifying her sexual abuser. *Blake v. State*, 933 P.2d 474, 477 (Wyo. 1997). The State asserts that Nurse Krininger testified to the cause of Foster's injuries as allowed under the exception and did not testify O'Brien was guilty of causing those injuries.

[¶ 30]   Ordinarily, we use a two-part test[3] for invoking this exception; however, although we believe that the trial court properly allowed Krininger's answer under the exception, the questions and answers that followed that decision were hearsay and were not properly admitted.   Erroneous evidentiary rulings will not be disturbed on appeal if the error is harmless.   *Warner v. State*, 2001 WY 67, ¶ 29, 28 P.3d 21, ¶ 29 (Wyo.2001). Generally, if other evidence properly established the defendant's guilt then we will find the error harmless.   *Id.* at ¶ 30.   Here, Krininger's hearsay testimony, that Foster had stated that the attack had been unprovoked, was in addition to testimony provided by eyewitnesses to the actual attack who described the attack as unprovoked and who also identified O'Brien as the attacker. The State did not refer to these statements of the nurse in its closing, and we find that the jury verdict would not have been different had this testimony been excluded.   The error, therefore, is harmless and does not require reversal for a new trial.

*Prosecutorial Misconduct*

[¶ 31]   The prosecutor made the following statement during closing argument:

> And what you need to do here is find Mr. O'Brien guilty and send a message to him and to people that might be like him or might have the same idea that they are not going to get away with this.   And I think that you will do that, ladies and gentlemen. And I will ask you to do that.

This Court has explicitly disapproved such arguments, finding "the fear in allowing such appeals is that the accused will be convicted for reasons wholly irrelevant to her guilt or innocence."   *Trujillo v. State*, 2002 WY 51, ¶ 9, 44 P.3d 22, ¶ 9 (Wyo.2002) (quoting *Gayler v. State*, 957 P.2d 855, 861 (Wyo.1998)). "Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem.   The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." *Id.*

Similarly, "send a message" arguments by prosecutors to juries are universally condemned.   The Mississippi Supreme Court in *Williams v. State*, 522 So.2d 201, 209 (Miss.1988), simply yet colorfully explained the problem with these arguments:

> The jurors are representative of the community in one sense, *but they are not to vote in a representative capacity.* Each juror is to apply the law to the evidence and vote accordingly.   The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged.   The jury is an arm of the State but it is not an arm of the prosecution.   The State includes both the prosecution and the accused.   The function of the jury is to weigh the evidence and determine the facts.   When the prosecution wishes to send a message they should employ Western Union.   Mississippi jurors are not messenger boys.

*Trujillo* at ¶ 9 (emphasis in *Trujillo* ).

[¶ 32]   We notice that no objection to these remarks was made at O'Brien's trial; therefore, the error must rise to the level of plain error.   "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Mazurek v. State*, 10 P.3d 531, 535 (Wyo.2000) (quoting *Yetter v. State*, 987 P.2d 666, 668 (Wyo.1999)).   We agree with the State that O'Brien was not convicted for reasons wholly irrelevant to his guilt or innocence.   This argument was not so prejudicial that it constitutes plain error.

[¶ 33]   Finally, O'Brien contends that the prosecutor committed misconduct when, during trial in violation of a pretrial ruling, he engaged in a line of questioning that the trial judge had ruled would be prohibited.   Lewis, the driver of the car occu-

---

**3.**   "[F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment [or diagnosis]; and sec- ond, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Stephens,* 774 P.2d at 72.

pied by O'Brien, was subpoenaed to testify. Lewis was facing criminal charges of accessory after the fact for his conduct during the police investigation of O'Brien's attack on Foster. Defense counsel advised the trial court that in order to avoid Lewis' refusal to testify based upon Fifth Amendment rights, the prosecutor and defense counsel had reached an agreement with Lewis limiting his testimony to events leading up to the incident, that he would identify O'Brien, and no questions would be asked regarding what occurred after Lewis left the parking lot. In response to the prosecution's concern that Lewis might testify that mutual combat had occurred, the trial court determined that the agreement limited both the prosecution and defense to identification only. The trial court refused the prosecution's request that it be allowed to impeach Lewis with statements that he made afterwards for which he was now charged.

[¶ 34] The prosecutor called Lewis to the stand, and the trial court sustained objections by both the prosecution and defense counsel that the other side was questioning on matters beyond the agreement. Despite a record showing that Lewis did not testify concerning any subject other than identification, O'Brien contends that, in violation of W.R.E. 608, the prosecution then questioned Shelly Lane in an attempt to go beyond the trial court's ruling by erroneously impeaching the testimony of Lewis. The prosecution asked Lane the following:

Q. What was Shawn Lewis in jail for?

A. Lying to the cops.

Q. Lying to the cops about what?

A. I don't know. Something about accessory after the fact. I think that's when they put him in jail.

Q. Accessory after the fact?

A. (Nods head.)

Q. Accessory after the fact of what?

A. I don't know.

Defense Counsel: Objection, Your honor, as irrelevant.

The Court: Sustained.

Q. Okay. But he was in jail for lying to the police?

A. I think so, yeah.

Q. Do you know what he lied to the police about?

A. No.

Q. Well, do you know what the police questioned him about?

Defense Counsel: Objection, Your Honor. It's irrelevant and no foundation of her knowledge.

The Court: Sustained.

Q. Well, do you know yourself if whether or not Mr. Shawn Lewis ever lied to the police?

Defense Counsel: Objection. It's irrelevant.

The Court: Sustained.

Q. Do you know if he ever lied to the police about beating up—David O'Brien beating up Jordan Foster?

Defense Counsel: Objection. It's irrelevant and no foundation.

The Court: Sustained.

Q. Did you ever hear of a person called Terry Perry?

A. Yeah. Yes.

Defense Counsel: Objection, Your Honor. It's irrelevant. No showing. I don't know where they're at.

The Court: Will Counsel approach the bench.

The record shows that defense counsel objected to each of these questions, and the trial court sustained these objections. The trial judge then called counsel to the bench and admonished the prosecutor to discontinue this line of questioning. The question presented is whether this conduct requires reversal upon appeal.

[¶ 35] Prosecutorial misconduct "has always been condemned in this state." *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, ¶ 9 (Wyo.2001) (quoting *Valerio v. State*, 527 P.2d 154, 156 (Wyo.1974)). Whether such misconduct has been reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error affected the accused's "substantial rights." *Id.* "The accused's right to a fair trial is a

substantial right. Wyo. Const. art. 1, §§ 6, 9, and 10; *and see, e.g., Jones v. State*, 580 P.2d 1150, 1154 (Wyo.1978)." *Id.* "Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Id.; Warner,* ¶ 18.

[¶ 36] In this case, the State's witnesses established that O'Brien had attacked Foster without provocation and severely beaten him. O'Brien contended that Foster was a mutual combatant because he confronted O'Brien. The jury had to determine whether this attack was unprovoked and whether the injuries inflicted were a serious bodily injury as that term is defined in the statute. The prosecutor's violation of the trial court's pretrial ruling was appropriately dealt with by the trial court. Based on the entire record, a reasonable possibility does not exist that, in the absence of the prosecutor's misconduct, the verdict might have been more favorable to the accused.

[¶ 37] The conviction is affirmed.