2011 WY 171

**Enroe J. JEALOUS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S-11-0097.

Supreme Court of Wyoming.

Dec. 30, 2011.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellant Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel; Wyoming Public Defender Program. Argument by Mr. Morgan.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Enroe J. Jealous appeals his conviction for aggravated assault and battery, alleging that the district court committed reversible error in failing to properly instruct the jury on the elements of the crime. We disagree and affirm.

## ISSUE

[¶ 2] Jealous offers this issue for our consideration:

Did reversible error occur when the trial court issued a confusing and misleading jury instruction, which was not in accordance with Wyoming law, and then failed to correct the error in response to a jury question?

## FACTS

[¶ 3] During the afternoon hours of December 29, 2009, Adrian Moss, Jealous' cousin, and her boyfriend, Jason Antelope (Jason), got into an argument while they were at the residence of Wendall Antelope, Sr. (Wendall), Jason's brother. Moss telephoned Jealous, upset and crying, and requested a ride away from the residence. Jealous, his brother, and two other individuals arrived at the residence a short time later.

[¶ 4] After placing her belongings in the vehicle, Ms. Moss situated herself in the front passenger seat. While the couple continued to bicker, Jason leaned inside the window to give her a hug. Shortly thereafter, Jason felt something hit his cheek, and he immediately withdrew from the car. He then noticed Jealous' brother placing a pellet pistol underneath the back seat. Jason backed away, and Jealous and the other occupants exited the vehicle. Jealous then retrieved a pellet rifle from the trunk and loaded it.

[¶ 5] Meanwhile, alerted by his wife that something was occurring between Jason and the vehicle's occupants, Wendall rushed outside to protect his brother. However, by the time Wendall got to the area, Jealous had twice shot Jason in the face, hitting him in the left cheek and upper lip. Jealous then reloaded the rifle and pointed it at Wendall's head. When Wendall saw the rifle, he shielded his face with his left arm and told Jealous to put down the weapon. Jealous did not immediately fire, but waited until Wendall had lowered his arm and then shot him in the right eye. The pellet caused irreparable damage to Wendall's eye, and it was surgically removed two weeks later.

[¶ 6] Jealous and his group then fled the scene. Upon being stopped by police a short time later, Jealous lied about his identity and denied having a pellet gun and shooting the victims. Ms. Moss initially tried to protect Jealous by taking responsibility for the shootings. However, she recanted her confession the next day. Police thereafter learned of Jealous' true identity and his involvement in the shootings but did not locate and arrest him until three months later.

[¶ 7] The State initially charged Jealous with four counts of aggravated assault and battery, two counts of reckless endangering, and one count of interference with a peace officer. However, the State later elected to dismiss five of the seven charges and to proceed to trial on two counts of aggravated

assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2011),[1] which alleged that Jealous caused serious bodily injury to Jason Antelope (Count I) and Wendall Antelope, Sr., (Count II) "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

[¶ 8] At the conclusion of the State's case-in-chief, Jealous moved for judgment of acquittal on both counts. The district court found insufficient evidence proving that Jealous caused serious bodily injury to Jason and granted Jealous' motion for judgment of acquittal on Count I but denied his motion with respect to Count II. The trial continued and the jury ultimately found Jealous guilty on that count. The jury specifically found that Jealous had acted both intentionally and knowingly, as well as recklessly under circumstances showing extreme indifference to the value of human life, in causing serious bodily injury to Wendall. The district court later sentenced Jealous to a term of imprisonment of three to eight years. This appeal followed.

### DISCUSSION

[¶ 9] Jealous contends the district court committed reversible error when it failed to properly instruct the jury on the elements of aggravated assault and battery. He first contends the district court's elements instruction was imprecise and confused the jury. He then claims the district court erred in not defining, in response to a jury question, the terms "intentionally," "knowingly," and "recklessly." Lastly, he maintains the district court erroneously instructed the jury that it could find him guilty on any or all of the theories of guilt it found applicable to the case.

 [¶ 10] It is well settled that a trial court has a duty to instruct a jury regarding the general principles of law applicable to the case. *Black v. State,* 2002 WY 72, ¶ 5, 46

P.3d 298, 300 (Wyo.2002). We review jury instructions as a whole and will not single out and consider in isolation individual instructions or parts thereof. *Id.; Brown v. State,* 2002 WY 61, ¶ 9, 44 P.3d 97, 100 (Wyo.2002); *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo.2001). We afford significant deference to the trial court in instructing the jury as long as the instructions in their entirety correctly state the law and sufficiently cover the relevant issues. *Black,* ¶ 5, 46 P.3d at 300. The test for determining whether a jury has been properly instructed on the necessary elements of the crime is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Bloomfield v. State,* 2010 WY 97, ¶ 13, 234 P.3d 366, 372 (Wyo.2010).

 [¶ 11] We embark upon our consideration of this issue by first noting that Jealous did not object at trial to the district court's instructions or its failure to define the terms at issue. Consequently, our review of the alleged errors is limited to the noticing of plain error. *Bloomer v. State,* 2010 WY 88, ¶ 9, 233 P.3d 971, 974 (Wyo.2010). Under the plain error doctrine, Jealous must establish, by reference to the record, a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way and that the violation adversely affected a substantial right resulting in material prejudice. *Id.; Cazier v. State,* 2006 WY 153, ¶ 10, 148 P.3d 23, 28 (Wyo.2006). To establish material prejudice, Jealous must show a reasonable possibility exists that he would have received a more favorable verdict in the absence of the errors. *Pendleton v. State,* 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo.2008); *Miller v. State,* 2006 WY 17, ¶ 15, 127 P.3d 793, 798 (Wyo.2006). We find that Jealous has not satisfied his burden.

 [¶ 12] Jealous' first complaint of error focuses on Instruction No. 12, which informed the jury of the elements of the charged crime:[2]

---

1. § 6–2–502(a)(i) provides that a person is guilty of aggravated assault and battery if he "[c]auses or attempts to cause serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"

2. We have chosen not to correct any punctuation or capitalization errors in the instruction.

1. On or about the 29th day of December, 2009,

2. In Riverton, Fremont County, Wyoming,

3. The Defendant, ENROE J JEALOUS,

4. caused serious bodily injury to another person, to wit; Wendall Antelope Sr.

5. intentionally, knowingly or recklessly,

6. under circumstances manifesting extreme indifference to the value of human life.

As Jealous correctly points out, the instruction separated the phrase "under circumstances manifesting extreme indifference to the value of human life" from "recklessly," although that phrase was meant to modify only "recklessly." *See Williams v. State,* 2002 WY 136, ¶ 17, 54 P.3d 248, 253 (Wyo. 2002). Admittedly, by formatting Instruction No. 12 as it did, the district court gave the impression that the circumstance addressed in element six modified all three mental elements found in element five. However, we cannot agree that, due to this formatting mistake, the instructions as a whole failed to appropriately state the relevant law to the jury or must have so confused the jury regarding the law that Jealous was materially prejudiced.

[¶ 13] Instruction No. 11, which mirrored the language of the aggravated assault and battery statute, informed the jury:

The pertinent parts of the statute concerning Aggravated Assault and Battery under which the defendant is charged ... reads in part as follows:

(a) A person is guilty of aggravated assault and battery if he: (i) causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

Instruction No. 5 told the jury, in pertinent part, that:

If in these instructions any rule, direction or idea is stated in varying ways, no emphasis thereon is intended, and none must be inferred by you. For that reason, you are not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions as a whole, and are to regard each in the light of all the others.

Furthermore, the district court gave the jury a special verdict form which parsed out the three alternative mental states of the crime and notably combined the modifying phrase "under circumstances manifesting extreme indifference to the value of human life" only with the "recklessly" mental element:

If you find the Defendant Guilty as to the crime of Aggravated Assault and Battery as charged in Count 2 of the Amended Information, please answer 1(a) below:

1(a) Did the Defendant:

_____ knowingly cause serious bodily injury to another person, to wit, Wendall Antelope Sr.;

_____ intentionally cause serious bodily injury to another person, to wit, Wendall Antelope Sr[.];

_____ recklessly cause serious bodily injury to another person, to wit, Wendall Antelope Sr. under circumstances which showed extreme indifference to the value of human life.

[¶ 14] Considering the special verdict form in conjunction with all the jury instructions given, we do not believe the jury was misled or confused as to the elements of the charged crime upon which it rested its guilty verdict. Notwithstanding the drafting defects in Instruction No. 12, that instruction otherwise accurately set forth the essential mental elements of the crime of aggravated assault and battery with which Jealous was charged. Additionally, Instruction No. 11 and the special verdict form correctly stated the law and clarified that the modifying phrase applied solely to "recklessly," thereby correcting any misperception which may have been caused by the defect in Instruction No. 12. Under the circumstances, we are unable to find the existence of plain error.

[¶ 15] Jealous' next contention of error concerns the district court's failure to define the terms "intentionally," "knowingly," and "recklessly" when asked to do so by the jury. The first part of the plain error test is satisfied because the record clearly reflects the asserted error. During deliberations,

the jury sent the district court a note requesting that it "clarify" the terms "intentionally, knowing, and recklessly," and also asking if it should "mark just one or more[,]" presumably referring to the special verdict form which, by using those terms, set out the State's alternative theories of guilt. The district court responded by stating:

> [T]he answer to your inquiry, ladies and gentlemen, is that you should feel free to mark either one or any or all of those three questions that you believe apply or that you find apply in this particular case. None, one, two, three; it's up to you.

The district court did not define the three terms, and the jury posed no further questions before returning its guilty verdict.[3]

■■■ [¶ 16] We next turn our attention to whether a clear and unequivocal rule of law was violated by the district court's failure to define the three mental states for the jury. This Court has consistently held that a trial court has no obligation to define a statutory term unless it has a technical meaning different from its ordinary meaning that a jury would misunderstand its import without further explanation. *Rolle v. State*, 2010 WY 100, ¶ 32, 236 P.3d 259, 273 (Wyo.2010); *Ewing v. State*, 2007 WY 78, ¶ 9, 157 P.3d 943, 946 (Wyo.2007). Employing that rule, we have previously determined that the terms "knowingly" and "intentionally" do not have a technical meanings under the law so as to require an instruction defining those terms. *Morris v. State*, 2009 WY 88, ¶ 16, 210 P.3d 1101, 1105–06 (Wyo.2009) ("knowingly"); *Montez v. State*, 2009 WY 17, ¶ 22, 201 P.3d 434, 441 (Wyo.2009) ("knowingly"); *Rowe v. State*, 974 P.2d 937, 940 (Wyo.1999) ("intentionally"). In light of this authority, it is clear the district court's failure to define "knowingly" and "intentionally" was not plain error.

■■■ [¶ 17] The question now becomes whether the district court committed plain error by not defining "recklessly." Subsumed in Jealous' argument on this point is a contention that the district court should have also instructed the jury on the meaning of

the phrase "under circumstances manifesting extreme indifference to the value of human life." While we agree with Jealous that such instructions should have been given, *see Williams*, ¶¶ 17–19, 54 P.3d at 252–53; *O'Brien v. State*, 2002 WY 63, ¶ 21, 45 P.3d 225, 232 (Wyo.2002), we cannot conclude that the failure to do so amounted to plain error inasmuch as the evidence supports the jury's guilty verdict under the alternative elements of intentionally and knowingly causing Wendall serious bodily injury. *Burnett v. State*, 2011 WY 169, ¶ 22, 267 P.3d 1083, 1090 (Wyo. 2011); *O'Brien*, ¶ 21, 45 P.3d at 232. Given the jury's verdict, prejudice cannot be established.

■■ [¶ 18] Jealous lastly claims the district court plainly erred in telling the jury that, to the extent it found them applicable to the case, it could mark any or all of the alternative mental states listed on the special verdict form. Jealous contends, by giving this instruction, the district court improperly permitted the jury to render what he maintains is an inconsistent verdict. Jealous, however, has not demonstrated that the district court's actions obviously, and not merely arguably, violated a clear and unequivocal rule of law.

[¶ 19] Jealous cites no Wyoming or federal authority to support his position. Although he cites to one court that has advanced a similar position, *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909, 911 (1987), the majority of courts do not follow this rule. Instead, the majority of jurisdictions follow the rule that inconsistencies in the verdict handed down in a single prosecution will not entitle the defendant to reversal of his conviction. *See State v. McClary*, 679 N.W.2d 455, 458–59 (N.D.2004); 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.10(b) (3d ed. 2007). This Court has long followed the general rule that consistency in a jury's verdict is not required. *Moore v. State*, 2003 WY 153, ¶ 16, 80

---

**3.** Since the jury did not ask additional questions, this Court presumes the district court's response adequately addressed the jury's concerns. *See*

*Rolle v. State*, 2010 WY 100, ¶ 31, 236 P.3d 259, 272–73 (Wyo.2010).

P.3d 191, 196 (Wyo.2003); *Lessard v. State*, 719 P.2d 227, 232 (Wyo.1986).

[¶ 20] Furthermore, there is no inconsistency in finding that Jealous acted recklessly while also finding that he acted intentionally and knowingly. In addressing the recklessly element of the crime, we said in *O'Brien v. State:*

> The Model Penal Code provides that when recklessness suffices to establish an element, such element also is established if a person acts purposely or knowingly. § 2.02(5) at 226. The Explanatory Note to the Code explains that this rule makes it unnecessary to state in the definition of an offense that the defendant can be convicted if it is proved that he was *more* culpable than the definition of the offense requires. Thus, if the crime can be committed recklessly, it is no less committed if the actor acted purposely. *Id.* at 228. In other words, if the evidence supports finding that a reasonable jury could have concluded that O'Brien intentionally or knowingly caused serious bodily injury to [the victim], then this special character recklessness is established.

*O'Brien,* ¶ 20, 45 P.3d at 232. Under this reasoning, if the evidence supports a finding that Jealous intentionally and knowingly inflicted serious injury upon Wendall, then it no less establishes that he acted recklessly under circumstances manifesting extreme indifference to the value of human life. Therefore, it was not plain error for the district court to instruct the jury that it could base its verdict on any and all proven theories of guilt.

[¶ 21] For all the reasons discussed above, the Judgment and Sentence of the district court is affirmed.