2003 WY 58

**Todd Ivan GOMEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 02–56.**

Supreme Court of Wyoming.

May 14, 2003.

Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Todd Gomez appeals from his conviction for aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(iv) and (b) (LexisNexis 2001).   He claims prosecutorial misconduct occurred when the state elicited testimony concerning victim impact.   He also claims error occurred when the state elicited testimony concerning a police officer's statement that sufficient evidence existed to arrest him for aggravated assault.   No objection was made to either area of inquiry, and so we review the claims under our plain error standard.   Finding no plain error, we affirm.

## ISSUES

[¶ 2]   Mr. Gomez presents the following issues:

*ISSUE I*

Whether prosecutorial misconduct occurred when the prosecutor elicited victim impact statements from Ms. Jacobsen?

*ISSUE II*

Whether plain error occurred when the state elicited testimony regarding an officer's belief that Mr. Gomez was guilty of aggravated assault/domestic violence?

The state phrases the issues as:

I.   Whether the prosecutor committed misconduct?

II.   Whether plain error occurred during Officer Baker's testimony?

## FACTS

[¶ 3]   Mr. Gomez was involved in an intimate relationship with Jadean Jacobsen for about a year.   During that time, in approximately April of 2001, Ms. Jacobsen learned she was pregnant.   She testified that Mr. Gomez was the father.   On July 15, 2001, Mr. Gomez and Ms. Jacobsen were supposed to meet and attend church together.   They missed each other and arrived separately at the church.   Mr. Gomez was driving a Chevy LUV pickup, which Ms. Jacobsen stated belonged to her.   The couple went into the church and sat together during the service.   After church, Ms. Jacobsen went out to the parking lot while Mr. Gomez remained in the church.   Ms. Jacobsen got into the pickup with the intent of taking it back from Mr. Gomez.   When Mr. Gomez saw Ms. Jacobsen sitting in the pickup, he came out of the

church. The testimony at trial was disputed as to what happened next. Ms. Jacobsen testified that Mr. Gomez told her to get out of the pickup and, when she refused, he physically removed her from it. She said she moved back toward the pickup and he pushed her down onto the ground. She got up and moved toward the pickup again, and he kicked her. Mr. Gomez testified that he did not push or kick Ms. Jacobsen and did not remove her from the vehicle. Rather, he stated, Ms. Jacobsen got out of the pickup and fell down as she started to walk away. Mr. Gomez was arrested and charged with aggravated assault and battery for intentionally, knowingly, or recklessly causing bodily injury to a woman he knew was pregnant. After a jury trial, he was convicted and sentenced to three to eight years in prison.

## STANDARD OF REVIEW

■ [¶ 4] Mr. Gomez claims error occurred when the state improperly elicited inadmissible testimony at trial concerning victim impact and a police officer's statement. Because Mr. Gomez did not object in either instance, we apply the plain error standard of review. Under that standard, Mr. Gomez must show that a clear and unequivocal rule of law was violated in a clear and obvious way resulting in denial of a substantial right and material prejudice. *Urbigkit v. State,* 2003 WY 57, ¶ 41, 67 P.3d 1207.

## DISCUSSION

### A. Victim Impact Testimony

■ [¶ 5] At trial, the state elicited the following testimony from Ms. Jacobsen:

Q. What happened?

A. And then before I made it to the truck, I got kicked laterally on my upper leg, thigh.

Q. Okay. By whom?

A. By Todd.

Q. *Did it hurt* ?

A. Yes. Worse than the falling.

. . . .

Q. And when he pushed you down, *did that hurt* ?

A. Yes. It scraped, I got scraped, like the rug burn effect, the red on the hands from it, my teeth, when my face hit after my fall hit, my chin was bloody, lip area. I had chipped teeth.

. . . .

Q. . . . You talked about your teeth being chipped?

A. Yes, sir.

Q. Which teeth were those?

A. The front four.

Q. Like top and bottom? Are they still chipped?

A. Yes. The dentist did not think it was worth doing anything to.

Q. *Can you tell a difference* ?

A. I could. For the longest time, it was bothering me. I tried to find another dentist and didn't make it in. It's not as bad now. I just don't—I mean, I'm not as aware of it as I was initially.

Q. Okay. *Is there anything that's still bothering you* ?

A. My leg. I can touch it, and it's still tender.

(Emphasis added.) Mr. Gomez claims the prosecutor committed misconduct in asking the questions highlighted in bold because they improperly elicited testimony concerning victim impact which was irrelevant, inflammatory, and prejudicial. In support of his claim, Mr. Gomez cites *Justice v. State,* 775 P.2d 1002, 1010–11 (Wyo.1989), for the proposition that admitting a victim's testimony as to the impact of the crime is error.

■ [¶ 6] We have considered the admissibility of victim impact evidence in several cases and have applied the following principles. For evidence to be admissible, it must be relevant. W.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In criminal cases, " '[e]vidence is always relevant if it tends to prove or disprove one of the elements of the crime charged.' " *Geiger v. State,* 859 P.2d 665, 667 (Wyo.1993) (quoting *Grabill v. State,* 621 P.2d 802, 809 (Wyo. 1980)). Relevant evidence may be excluded,

however, if "its probative value is substantially outweighed by the danger of unfair prejudice." W.R.E. 403.

[¶ 7] In holding that the victim impact testimony in *Justice* was admitted in error, the Court said:

It is clear that the testimony offered by the victims of this crime with respect to how it affected them in connection with their lives after the crime is absolutely irrelevant with respect to the issues before the jury. Their discussion of the impact of the crime upon them could not in any way serve to establish any of the elements of the crime of aggravated robbery. The only purpose must have been to attempt to arouse the passions of the jury.

775 P.2d at 1010. In contrast to *Justice*, the testimony Mr. Gomez challenges here consisted of Ms. Jacobsen's description of her injuries testimony that was relevant and necessary to prove the bodily injury element of the aggravated assault charge.[1] Therefore, her testimony was proper unless we conclude it should have been excluded because the danger of unfair prejudice from its admission substantially outweighed its probative value. W.R.E. 403. For this Court to reach that conclusion, Mr. Gomez must demonstrate the evidence had little or no probative value and was extremely inflammatory or introduced for the purpose of inflaming the jury. *Geiger*, 859 P.2d at 668. We conclude the testimony elicited from Ms. Jacobsen that it hurt to be kicked and pushed to the ground, the chipped teeth continue to bother her, and her leg is still tender was not extremely inflammatory. No plain error occurred.

**B. Evidence of Officer's Statement That There Was Sufficient Evidence for Arrest**

[¶ 8] At trial, in response to the prosecutor's question, "what happened then," Brenda Baker–Collins (Officer Baker), a patrol officer, testified: "At that point, Officer Brackin ... radioed that *there was enough evidence and that Mr. Gomez could be arrested for Aggravated Assault, Domestic Violence.*" (Emphasis added.) Mr. Gomez claims this testimony constitutes plain error because implicit in the statement is the conclusion that Officer Brackin believed Ms. Jacobsen had been assaulted. Mr. Gomez cites *Whiteplume v. State*, 841 P.2d 1332 (Wyo. 1992), in support of his claim that testimony vouching for the credibility of the victim is inadmissible. In *Whiteplume*, in response to the question, "[w]hat did you do next," an officer testified, "I made the determination that she had been raped." 841 P.2d at 1339. On appeal, the Court concluded:

[A]dmission of the deputy sheriff's "rape determination" testimony undermines our judicial confidence in the jury's verdict. Consequently, we hold that a reasonable possibility exists that, had the jury not heard the deputy sheriff's "rape determination" testimony, the verdict might have been more favorable to appellant.

*Id.* at 1341.

[¶ 9] We see important distinctions between the testimony in *Whiteplume* and Officer Baker's testimony. Unlike the testimony in *Whiteplume*, Officer Baker's testimony did not involve a determination by law enforcement that Ms. Jacobsen had in fact been assaulted but showed only that there was sufficient evidence to warrant an arrest. It cannot, therefore, be accurately characterized as vouching for the truth of the victim's testimony. Moreover, under the circumstances of this case and in light of the evidence presented, we are not convinced a reasonable possibility exists that, absent Officer Baker's testimony, the verdict might have been more favorable to Mr. Gomez. When the record is reviewed in its entirety, Officer Baker's testimony does not stand out as anything more than factual reporting of the events leading up to Mr. Gomez's arrest. Additionally, the state presented testimony from several witnesses who arrived on the

---

1. Wyo. Stat. Ann. § 6–2–502 (LexisNexis 2001) provides in pertinent part:

(a) A person is guilty of aggravated assault and battery if he:

...

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

scene immediately after the confrontation between Mr. Gomez and Ms. Jacobsen. Their testimony concerning what they observed in the aftermath buttressed Ms. Jacobsen's testimony, further persuading us that, even absent Officer Baker's testimony, the verdict likely would not have been different.

[¶ 10]   Affirmed.