2003 WY 153

**Timothy Daniel MOORE, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–250.

Supreme Court of Wyoming.

Nov. 25, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General. Argument by Mr. Fetsco.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and PARK, D.J.

PARK, District Judge.

[¶ 1] The Appellant, Timothy Daniel Moore (Moore), was originally charged with

one count of aggravated burglary, two counts of aggravated assault, two counts of aggravated kidnapping, and one count of blackmail. A jury found him guilty of one count of aggravated burglary, two counts of battery, two counts of kidnapping, and one count of blackmail. He was sentenced to 180 days of imprisonment on the battery convictions, concurrent; five to ten years on the aggravated burglary, consecutive to the battery; five to ten years on the kidnappings, concurrent to each other but consecutive to the aggravated burglary; and two to five years on the blackmail, concurrent to the kidnapping convictions but consecutive to the aggravated burglary conviction. In this appeal, Moore presents questions of insufficient evidence, an inconsistent verdict, improperly admitted misconduct and victim impact evidence, and prosecutorial misconduct.

[¶ 2] We affirm.

### ISSUES

1. Was there sufficient evidence to support the two kidnapping convictions?

2. Does a conviction of the lesser charge of battery, instead of aggravated assault, result in an inconsistent jury verdict?

3. Did the trial court err in allowing evidence of previous assaults by Moore on one of the victims?

4. Did testimony of one of the witnesses to the events in question constitute impermissible victim impact testimony?

5. Did the fact or manner of the prosecutor's argument regarding the uncharged misconduct evidence constitute prosecutorial misconduct?

### FACTS

[¶ 3] Moore and Ms. Terri James (Ms. James) had a fifteen-year relationship and had four children: Jennifer, Janeil, Jesse, and Janitta. The Moore/James relationship was rocky at best. Moore had been abusive and threatening to Ms. James and, at times, Ms. James responded by attacking Moore. In July 2001, Moore's brother, David Brian Moore (Brian), moved to Rawlins to look for work and began to live in the same residence with the parties and their children.

[¶ 4] By September 2001, the Moore/James relationship had deteriorated to the point that Ms. James asked Moore to leave, so he went to Texas with his nephew. During his absence, Ms. James and Brian leased another house and moved, abandoning the trailer where all parties had previously resided. The absent Moore was not informed of the move or of the new address. Moore returned to Rawlins in early October.

[¶ 5] After returning to Rawlins, Moore was able to locate Ms. James and Brian and came to their house on the evening of October 14, 2001. A Mr. Eckstrom accompanied Moore. Eckstrom was charged with similar crimes, but he was acquitted by the same jury that convicted Moore. Moore forced his way into the house, shoved Brian, threatened him, hit him with a handgun, and taped his hands together with duct tape. Moore's 14–year–old daughter, Jennifer, testified that Moore beat Brian for several hours. Moore also took Brian's wallet and gave Eckstrom some money from it. At one point, Brian made an unsuccessful attempt to escape by trying to jump through a window. Moore then threw Brian on a couch and ordered him not to make any further escape attempts.

[¶ 6] Ms. James was gone when Moore entered the house, because she worked nightshifts at the Wyoming State Penitentiary. She returned home from work early the following morning. Moore attacked her as she entered the house, hit her in the face with a handgun, and threatened her and the children. Eventually, Moore tired, the beatings subsided, and everyone retired to rest from the ordeal. During the next three days, Moore, Ms. James, and Brian, together and individually, left the residence. Brian left to renew a job search, to shop, and to feed a dog that had been left at the former residence. Moore emphasizes that Brian was present when a Wyoming State trooper gave Moore a citation for the accident in which he was involved while returning from Texas, and that he gave no sign to the trooper that he was being held against his will. Moore also points out that Ms. James returned to work each evening during the al-

leged confinement, and that Ms. James, her brother (who was unaware of the situation), and Moore went to the Carbon County Courthouse to obtain a vehicle title.

[¶ 7] Both Brian and Ms. James testified that they did not report the kidnappings because of their fear for the safety of the children and each other. Moore had threatened them, reminding them that he had a gun. Eventually, Ms. James told her brother, who also worked at the prison with her. Her brother insisted that Ms. James report the matter, and he drove her to the Rawlins police station. As a result of this report, various law enforcement officers went to the residence, questioned all participants, and eventually arrested Moore.

## DISCUSSION

### I. INSUFFICIENT EVIDENCE

[¶ 8] In his first issue, Moore contends that the evidence was insufficient to convict him of kidnapping Ms. James and Brian. He points out that the victims were, at various times, out in the community and therefore not confined; and that in post-trial motions, the prosecutor conceded that the victims were not confined during the entire time frame charged in the Information, *viz* October 14 through October 17, 2001.

[¶ 9] When reviewing an appeal based on sufficiency of the evidence, we view the evidence, and any reasonable inferences based thereon, in a light most favorable to the State. *Allen v. State,* 2002 WY 48, ¶ 58, 43 P.3d 551, ¶ 58 (Wyo.2002). In such a review, we do not substitute our judgment for that of the jury; instead, we determine whether reasonable and rational jurors could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* Moore's contention is that the evidence was insufficient to support a finding that he unlawfully confined the victims within the meaning of Wyo. Stat. Ann. § 6–2–201 (LexisNexis 2003). This statute provides that:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the remov-

al, or if he unlawfully confines another person, with the intent to:

. . . .

(iii) Inflict bodily injury on or to terrorize the victim or another.

[¶ 10] Kidnapping requires confinement with the intent to inflict bodily injury or terrorize the victim or another. *Doud v. State,* 845 P.2d 402, 406 (Wyo.1993). Moore's confinement of Brian and Ms. James, with the intent to either inflict bodily injury or to terrorize them, is sufficient for a conviction under the statute. Subsection (a)(iii) uses both "inflict bodily injury" and "terrorize" as the basis for a charge of kidnapping. Moore has not raised any alternative charging problem, so this Court will not discuss it as an issue. Sufficient evidence existed for the jury to find that Moore unlawfully confined the victims within the meaning of Wyo. Stat. Ann. § 6–2–201(a)(iii). There is evidence that Brian was terrorized with beatings and threats while being held against his will. There is also evidence that Ms. James was threatened, ordered to keep quiet or others at the residence would be harmed, not allowed free run of the house, and not allowed to check on her children.

[¶ 11] Moore argues that the verdict is not proper because there is no evidence that the confinement extended for the entire period charged in the Information. Moore provides no support or cogent authority for the proposition that he should have been acquitted because the victims may not have been confined for the entire time from October 14 through October 17. Although this same argument was presented to the trial court, it was as lacking in authority and support then as it is on appeal. We will not consider nonjurisdictional issues unless they have been presented with at least a minimum effort to provide a cogent legal argument. *Bailey v. State,* 12 P.3d 173, 178 (Wyo.2000).

[¶ 12] Further, this argument is not supported by logic. Moore's contention, were it to prevail, would force a jury to acquit him even if the jury were to find that the victims were confined for most, but not all, of the times alleged in the Information. Under the constitutional requirements and

the Wyoming Rules of Criminal Procedure, an information is sufficient if it: 1) contains the elements of the offense charged; 2) fairly informs a defendant of the charge against which he must defend; and 3) enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Estrada–Sanchez v. State,* 2003 WY 45, ¶ 13, 66 P.3d 703, ¶ 13 (Wyo.2003). The Information in this case alleged that the allegations of kidnapping occurred in the time period of October 14 through October 17. This does not require that the State prove that the confinement was for this entire period, only that the victims were confined during some part of this time. No specific time period is required to satisfy the element of confinement. *Doud,* 845 P.2d at 406. The record supports the jury's finding that Ms. James and Brian were confined.

## II. THE JURY VERDICT WAS INCONSISTENT

[¶ 13] The jury convicted Moore of the charge of aggravated burglary; it acquitted Moore of the charges of aggravated assault, Wyo. Stat. Ann. § 6–2–502 (LexisNexis 2003), but found him guilty of the lesser misdemeanor charges of battery, Wyo. Stat. Ann. § 6–2–501 (LexisNexis 2003).

[¶ 14] Wyo. Stat. Ann. § 6–3–301 (LexisNexis) provides that "[a] person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein." Pursuant to § 6–3–301(c), a person is guilty of aggravated burglary, if, in the course of committing the crime of burglary, the person:

    (i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;

    (ii) Knowingly or recklessly inflicts bodily injury on anyone; or

    (iii) Attempts to inflict bodily injury on anyone.

[¶ 15] The State's theory of the charge of aggravated burglary was that Moore, while armed, entered into the James/Brian residence with the intent to feloniously assault Ms. James and Brian. Moore argues that

since the jury did not convict him of the felony, but instead convicted him of the lesser misdemeanor charge of battery, there is no basis for the burglary conviction. Moore's contention is that since the jury did not believe he committed felonious assault, it could not have convicted him of entering into a residence with the intent to commit a felony.

[¶ 16] This Court has previously noted several times that consistency in a jury's verdict is not necessary. *Hankinson v. State,* 2002 WY 86, ¶ 11, 47 P.3d 623, ¶ 11 (Wyo.2002). In *Hankinson,* the Court has specifically adopted the logic of Professor Wright:

    In a case in which there are multiple counts, each one is treated as if it were a separate indictment. The verdict on the various counts need not be consistent. An acquittal on one count does not prevent conviction on another, even though the evidence is the same and defendant could not have committed one crime without committing both, so long as the evidence is sufficient to support conviction on the count on which a guilty verdict was reached.

3 Charles Alan Wright, *Federal Practice and Procedure* § 514 at 14–16 (1982).

[¶ 17] The jury only had to determine that Moore entered the residence with the intent to commit a felony, in this case, aggravated assault. It was not necessary that they find that an aggravated assault actually occurred. The evidence is sufficient to support the jury's verdict that he had the intent to commit the assault, and the evidence is equally sufficient to support the finding as to the lesser charge of battery. The verdict is not inconsistent.

## III. UNCHARGED MISCONDUCT EVIDENCE

[¶ 18] The disputed evidence consisted of testimony about the history of abusive behavior of Moore toward Ms. James. Ms. James testified that for about six years preceding the events in question, Moore's relationship with her had become increasingly violent. There was testimony that Moore had a confrontation with Ms. James in a bar,

following which she moved to Montana for a period to get away from him. She testified that Moore hit her "probably every week;" that the couple had a fight in a restaurant in Rawlins, after which Moore pulled her into a car, drove her out of town, hit and kicked her, and threatened to bury her. There was additional similar testimony of threats and abuse. The trial court conducted the proper hearings and admitted the evidence under W.R.E. 404(b).

[¶ 19] The structure and purpose of W.R.E. 404 is thoroughly discussed in several cases, most recently *Gleason v. State*, 2002 WY 161, ¶ 16, 57 P.3d 332, ¶ 16 (Wyo. 2002). W.R.E. 404(b) maintains the general principle that character evidence may not be admitted to prove conduct remains intact in the first sentence. *Id.* But "[e]vidence of other crimes, wrongs, or acts," which logically may or may not be character evidence, is admissible to prove things other than character. Consequently, the exceptions to the rule found in subsection (a) of the rule are not of the same nature as those found in subsection (b). The former allows evidence of character to prove conduct; the latter allows evidence of specific instances of conduct to prove "consequential facts," such as intent or knowledge. *Gleason*, ¶ 17.

[¶ 20] In *Gleason*, this Court established a protocol that trial courts were to follow both to determine whether the prior bad acts might properly be presented to the jury and to provide a record so that this Court could determine whether the trial judges had properly exercised their discretion. *Gleason*, ¶ 27. Moore concedes that the trial court "scrupulously" followed the proper procedures in determining whether the proffered bad acts could properly be admitted; therefore, the procedures established in *Gleason* will not be set forth in this opinion. Moore's contention is that the trial court improperly admitted the evidence as to certain acts involving him and Ms. James to prove an essential element of the crime, specifically, intent.

[¶ 21] Initially, Moore complains that the evidence presented by Ms. James was not corroborated. This is an issue that goes to the weight of the evidence,

not to its admissibility. The general rule in criminal cases when the issue of the sufficiency of the evidence is raised on appeal is well settled. The appellate courts view the evidence in the light most favorable to the prosecution, and all reasonable inferences are resolved in favor of the State, leaving out of consideration any evidence in conflict therewith. *Ostrowski v. State*, 665 P.2d 471, 481 (Wyo.1983). The Court will not second-guess the jury decision as to whether these acts occurred.

[¶ 22] The trial court ruled that the evidence was admissible to establish a course of conduct between the parties and to show intent. Additionally, the court found that the evidence could be used by the jury to evaluate the credibility of Ms. James, an apparent reference to whether she was believable when she testified that she did not report the confinement because of her fear of Moore. Decisions regarding the admission of evidence are within the discretion of the trial court, and we will not disturb them absent an abuse of that discretion. *Wilson v. State*, 14 P.3d 912, 918 (Wyo.2000). When evidence is offered under the provisions of W.R.E. 404(b), there is no abuse of discretion so long as there is a legitimate basis for the trial court's ruling. *Id.*

[¶ 23] W.R.E. 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence. *Gleason*, ¶ 18. We have held that evidence of prior similar assaults is admissible to show intent. *Wilson*, 14 P.3d at 918. Evidence of prior assaults was also relevant to support the credibility and corroborate the testimony of the victims. The evidence was admissible to show that Moore intended to control the actions of Ms. James and Brian, and that his past conduct established that he was capable of carrying out the threats that he made to his victims in order to keep them from escaping. We hold

that no abuse of the district court's discretion occurred when the district court determined that the probative value of the prior bad acts evidence admitted here was not outweighed by the danger of unfair prejudice.

## IV. IMPROPER VICTIM IMPACT TESTIMONY

[¶ 24] Moore argues that victim impact testimony was improperly allowed during the evidentiary part of the trial. Specifically, the 14–year–old daughter of Moore and Ms. James, Jennifer James, testified that she was "really scared" during the events in question and that her fear was such that she "kept throwing up." During closing argument, the prosecutor stated: "I would submit to terrorize someone is to make them afraid. And consider the testimony of Jennifer James, who witnessed these incidents. She was so upset, so afraid, she threw up, and she was a witness. How do you think the victims felt?" During rebuttal, the prosecutor again commented on Jennifer's fear. The defense counsel did not object to the testimony or the prosecutor's comments.

[¶ 25] Because there was no objection, Moore must demonstrate that the presentation of the statements of the witness were plain error. "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Mazurek v. State*, 10 P.3d 531, 535 (Wyo.2000) (citing *Yetter v. State*, 987 P.2d 666, 668 (Wyo.1999)).

[¶ 26] We have applied the following principles to the consideration of the admissibility of victim impact evidence. The evidence must be relevant to be admissible. W.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In criminal cases, "[e]vidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Gomez v. State*, 2003 WY 58, ¶ 6, 68 P.3d 1177, ¶ 6 (Wyo.2003) (quoting *Geiger*

*v. State*, 859 P.2d 665, 667 (Wyo.1993)). Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice." W.R.E. 403.

[¶ 27] Testimony of the victims of a crime showing how it affected their lives after the crime is irrelevant with respect to the issues before the jury. *Justice v. State*, 775 P.2d 1002, 1010–11 (Wyo.1989). In the instant case, Jennifer's testimony was relevant. It helped to show Moore's control over the victims thus proving an element of the kidnapping. The evidence was not offered for nor did it go to establish the impact on this young girl's life after the crime. Further, Moore cannot demonstrate any violation of a clear and unequivocal rule of law, that he was denied a substantial right, or that he was materially prejudiced by the presentation of this testimony. The testimony was properly received, and no plain error occurred.

## V. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT

[¶ 28] Finally, Moore contends that the prosecutor committed misconduct by making improper argument during closing. Specifically, Moore argues that it was improper for the prosecutor to argue the victim impact statements just discussed. Moore also asserts that it was improper for the prosecutor to state or at least imply that Moore's actions were gauged to force Ms. James to give him money when, in fact, he had a substantial sum of money in his possession at the time of his arrest. Finally, Moore insists that it was improper for the prosecution to argue to the jury that he was "undercharged" as a result of his actions. Moore did not object to any of these arguments, so this issue must also be reviewed under a plain error standard.

[¶ 29] Allegations of prosecutorial misconduct are reviewed by referring to the entire record to determine whether a defendant's case has been so prejudiced that he has been denied a fair trial. *Dysthe v. State*, 2003 WY 20, ¶ 22, 63 P.3d 875, ¶ 22 (Wyo.2003). Whether or not any comment

within a closing argument is improper is measured in the context of the entire argument. *Id.* Reversal is warranted only if a reasonable probability exists that without the error the appellant may have enjoyed a more favorable verdict. *Id.* The defendant has the burden of proof to prove this issue. *Id.*

[¶ 30] Closing arguments must be based upon the evidence submitted to the jury. *Trujillo v. State,* 2002 WY 51, ¶ 5, n. 2, 44 P.3d 22, ¶ 5, n. 2 (Wyo.2002). A closing argument provides to counsel ways of viewing the significance of the evidence. *Id.* Both prosecutors and defense counsel may review the evidence and suggest reasonable inferences based upon this evidence to the jury. *Id.* This Court recently adopted the broad guidelines found in I A.B.A., Standards for Criminal Justice 3–5.8 at 3.87 to 3.88 (2d ed.1980):

> (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> (b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
>
> (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
>
> (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Dysthe,* ¶ 24 (citing *Wilks v. State,* 2002 WY 100, ¶ 27, 49 P.3d 975 [¶ 27] (Wyo.2002)).

[¶ 31] The victim impact statement argument has already been considered and rejected. The prosecutor did indicate that Moore was motivated by money, and the record is such that this is a reasonable inference. However, after objection was made in chambers, the prosecutor returned to the courtroom and informed the jury that Moore had between $1800 and $2000 in cash on his person when he was arrested. None of this is contained in the record, and the significance of the prosecutor's argument is minimal and does not rise to the level of plain error.

[¶ 32] Last, the prosecutor did argue that Moore was undercharged. This was in response to argument made by defense counsel that the charges were not reasonable in light of the circumstances and that Moore was overcharged. It was appropriate for the prosecutor to respond to the defense's argument. Since Moore opened the door and raised this issue, he cannot now be heard to object when the State properly responds. Nothing in the closing argument of the prosecutor violated the standards set by this Court. Prosecutorial misconduct was not present during closing argument, and nothing in these comments can be said to have adversely affected Moore's right to a fair trial.

[¶ 33] Affirmed.

GOLDEN, Justice, specially concurring.

[¶ 34] I write separately to comment on Moore's complaint that the prosecutor erred when in rebuttal closing he told the jury that the prosecutor had undercharged Moore, that Moore's threatening Brian Moore with death using the gun was an aggravated assault that wasn't charged, and that Moore's confining the four children could have been charged as kidnapping. Moore acknowledges that trial defense counsel did not object to the prosecutor's argument and, therefore, he must demonstrate plain error on appeal. Moore contends that at a minimum the prosecutor's "undercharged" argument violates one of the guidelines found in I A.B.A. Standards for Criminal Justice 3–5.8 at 3.87 to 3.88 (2d ed.1980) as referred to in *Dysthe v. State,* 2003 WY 20, ¶ 24, 63 P.3d 875, 885 (Wyo.2003) (citing *Wilks v. State,* 2002 WY 100, ¶ 27, 49 P.3d 975, 986–87 (Wyo. 2002)):

> (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt

or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

Moore claims the prosecutor's "undercharged" argument injected into the trial issues that were not in evidence and were broader than the charges the jury was to decide. Moore has not cited, however, any specific case directly on point.

[¶ 35] Responding to Moore's complaint, the State tells us the "rest of the story," namely, that the prosecutor's "undercharged" comment was a reasonable antidote to trial defense counsel's closing argument statement to the jury that Moore "has been overcharged in this situation and that his conduct does not rise to the level of those six felony charges." The State has not cited, however, any specific case directly on point.

[¶ 36] The Court holds that because Moore "opened the door," the prosecutor's antidote was proper. I respectfully disagree. Trial defense counsel's "overcharged" comment properly directs the jury's attention to that conduct of Moore's which the prosecution has used to support the official charges filed against him. In contrast, the prosecutor's "undercharged" comment improperly diverts the jury's attention to conduct of Moore's that the prosecution consciously chose not to use as support for additional charges. I would hold that the prosecutor's "undercharged" comments stepped over the line and were not a reasonable antidote; but I would further hold that Moore has not proved that a substantial right has been denied him and, as a result, he has been materially prejudiced. By reference to the entire record, I am not convinced that the prosecutor's comments had a deleterious effect on the jury's verdict.