2003 WY 160

**Dean MITCHELL, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–256.

Supreme Court of Wyoming.

Dec. 15, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling; Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶1] Appellant Dean Mitchell was convicted by jury of third degree sexual assault and two counts of soliciting a minor to engage in illicit sexual relations. During the trial, the investigating police officer testified without objection that it appeared a sexual assault had occurred out of his jurisdiction. Mitchell contends this statement violated the rule against vouching for the credibility of the victim established in *Whiteplume v. State*, 841 P.2d 1332 (Wyo.1992). Appellee, the State of Wyoming, contends that this case is distinguishable from those *Whiteplume* facts and reversal is not required.

[¶2] We agree that this case is distinguishable and affirm.

## ISSUES

[¶3] Mitchell presents the following issue for our review:

Whether the rule prohibiting the vouching for the credibility of the "victim" was violated by law enforcement in Appellant's case?

The State rephrases the issue as:

Whether a police officer's testimony, allegedly vouching for the credibility of another witness, constitutes plain error.

## FACTS

[¶4] On November 10, 2001, twenty-three year old Mitchell and his sixteen-year-old male friend, L.R., encountered three girls, thirteen year-old C.M., twelve year-old A.S., and thirteen year-old F.B., in downtown Sheridan. L.R. and C.M. knew each other, and the girls told the males of their plans to go skating that evening at Scotty's Skate Castle. Those plans changed after it was agreed that Mitchell and L.R. would pick up the girls at Scotty's after their parents dropped them off so that the five could be together.

[¶5] About 7:00 p.m. that evening, the girls were dropped off at Scotty's, went inside, but did not pay to skate. When Mitchell and L.R. arrived a few minutes later, the girls entered the back seat of the car that

Mitchell was driving and all left together. Mitchell drove to a local liquor store, and at least one of the girls gave Mitchell some money, and he bought a fifth of vodka that the group passed around and two of the girls drank. Mitchell drove the group to a school parking lot and kissed both F.B. and A.S. Mitchell then drove to an out-of-the way snowmobile parking lot and parked there.

[¶ 6] At Mitchell's suggestion, C.M. and F.B. took off their shirts, and Mitchell engaged all three of the girls in kissing. He touched C.M. on her breasts and vaginal area and asked her to have sex with him or perform fellatio on him. C.M. refused him twice and got out of the car. Mitchell also touched A.S. on her breasts, exposed himself, and while she was seated on his lap, attempted to digitally penetrate her. Mitchell asked A.S. several times to perform fellatio on him, but she refused and also got out of the car. A.S. joined C.M., who was sitting on the road, and C.M. pretended to have been bitten by a snake so that Mitchell would take the girls back to Sheridan. Mitchell did return the group to Sheridan and parked in an alley behind the residence of F.B.'s foster parents.

[¶ 7] Officer King of the Sheridan Police Department pulled into the alley behind the vehicle and smelled alcohol on one of the girls. More officers joined him and learned that at least two of the girls had been drinking alcohol bought for them by Mitchell and Mitchell may have had sexual contact with the minor girls. Mitchell was arrested and the girls taken to the police station for further interviews.

[¶ 8] For his conduct with C.M. and A.S., Mitchell was charged with two counts of third degree sexual assault[1] and two counts of soliciting a minor to engage in illicit sexual relations.[2] After a two-day trial, a jury convicted Mitchell of third degree sexual assault

on C.M. and of soliciting both girls to engage in illicit sexual relations, but acquitted him of third degree sexual assault on A.S. Mitchell was sentenced to eight to ten years for the third degree sexual assault, a concurrent four to five year term for soliciting a sexual act from C.M., and a four to five year term for soliciting from A.S. to run consecutive to the other two sentences. This appeal followed.

## DISCUSSION

[¶ 9] Relying solely on our decision in *Whiteplume*, Mitchell contends that error per se occurred when a testifying officer conveyed his opinion that Mitchell was guilty. During trial, the prosecution questioned an investigating officer, Officer Thompson, about the events that happened on the night that Mitchell was arrested. The prosecutor asked, "... and at that point in time what did you determine it would be appropriate to do?" Officer Thompson responded, "[a]t that point I determined this had definitely occurred outside the city limits of Sheridan, and I believed that there was a sexual assault that had occurred. So, I was starting to make arrangements to call the Sheridan County Sheriff's Office to investigate it." Defense counsel did not object. While conceding that the prosecutor's question was not deliberately calculated to elicit improper testimony, Mitchell nevertheless contends that the experienced investigator's testimony violated the rule against opinion-of-guilt testimony established in *Whiteplume*.

[¶ 10] *Whiteplume* examined the impact of the following statement: "I listened to her story and made a determination that she had been raped." *Whiteplume*, 841 P.2d at 1339. We held that the conviction for sexual assault required reversal because an experienced law enforcement officer "volunteered" an opinion as to the guilt of the defendant and to the

---

1. Wyo. Stat. Ann. § 6–2–304(a)(ii): (a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree . . .

   (ii) The actor is an adult and subjects a victim under the age of fourteen (14) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim[.]

2. Wyo. Stat. Ann. § 14–3–104: Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, anyone who solicits, procures or knowingly encourages anyone under the age of sixteen (16) years to engage in illicit sexual penetration or sexual intrusion as defined in W.S. 6–2–301 is guilty of a felony, and upon conviction shall be imprisoned for a term not more than five (5) years.

credibility of the victim under circumstances that made it appear that it was not done inadvertently. The investigating officer had fifteen years of experience, 1,500 hours of training, and had investigated about seventy rapes. His education consisted of a bachelor's degree in psychology and a master's degree. *Id.* at 1339. The State's case was tenuous and the quality of the victim's testimony was deemed poor because it was not corroborated and was contradicted by some of the physical evidence. *Id.* "In measuring the quantum of harm caused by the error, we considered the strength of the prosecution's case against the accused." *Id.* at 1340. No physical evidence supported the guilt of the accused, and a close factual dispute existed which brought credibility to the center of the controversy, *i.e.*, whether the sexual encounter was consensual or an unwarranted assault. *Id.* In light of the particular circumstances of the *Whiteplume* case, we found it a "close one that truly calls upon the most careful exercise of delicate judicial judgment." *Id.* at 1340–41. Ultimately, we concluded that the officer did imply that he believed or held an opinion with respect to the victim's version of the events surrounding the assault. "He linked his 'rape determination' only with 'her story.' We can construe his 'rape determination' as nothing less than his inferential vouching for the truth of the victim's testimony." *Id.* at 1340.

[¶ 11] Since *Whiteplume*, our review of issues concerning opinion testimony has developed the following rules. We apply an error-per-se standard when a prosecutor has improperly elicited an opinion of either defendant's guilt or the truthfulness of a witness. *Taylor v. State*, 2001 WY 13 ¶ 21, 17 P.3d 715, ¶ 21 (Wyo.2001). When the prosecutor's question is not a signal for the witness's credibility-opinion-testimony and defense counsel did not object at trial the plain error standard, not the per se error standard, applies. *Dudley v. State*, 951 P.2d 1176, 1178–79 (Wyo.1998). When a prosecutor does not seek an opinion but an investigating officer's testimony supplies one, we review the record to determine if the officer is implying that he believed or held an opinion with respect to the victim's version of the events surrounding the assault. *Whitep-*

*lume*, 841 P.2d at 1339–40. If the officer intended to impliedly vouch for the truth of the victim's accusations, no corroborating evidence exists, and the central jury issue is the victim's credibility, we will find reversible error when our review of all of the circumstances demonstrates prejudice to the extent that our confidence in the verdict is undermined. *Id.* at 1340–41; *Dudley*, 951 P.2d at 1180.

[¶ 12] Mitchell asserts that the circumstances in this case are identical to those in *Whiteplume* that led to reversal of that conviction because the opinion testimony materially prejudiced the defendant. Mitchell contends that the state's case was based entirely on the testimony of the four young witnesses, C.M., A.S., F.B., and L.R., and allowing a law enforcement officer to vouch for the victims' credibility was particularly harmful to Mitchell because it would have carried significant weight with the jury. Mitchell points out that Officer Thompson had four years of experience and would have known that it was improper to make this particular statement in front of a jury. Mitchell claims that credibility of the witnesses was crucial since the defense theory that was argued at closing contended that the four teenagers had lied about the evening as demonstrated by many inconsistencies in their testimony, L.R.'s admission that his memory was "foggy," and facts showing that they had changed their stories following police interviews. Mitchell points to these inconsistencies, "foggy" memories, and the jury's acquittal on one count as circumstances demonstrating the closeness of this case and that the officer's opinion testimony materially prejudiced him with the jury.

[¶ 13] The State contends that the circumstances are not identical to *Whiteplume*, and our review of the record causes us to agree with this view. In *Whiteplume*, after reviewing all of the circumstances, we concluded that the prosecutor had not intended to elicit an opinion of defendant's guilt or the victim's credibility, but because the officer was the first to testify, had fifteen years of experience and a master's degree, we had concerns that the officer's opinion

testimony was deliberate rather than inadvertent. *Whiteplume*, 841 P.2d at 1339. Although we could not know this for certain, we did conclude that the officer's experience and education meant that the jury hearing that testimony would reasonably draw the conclusion that he believed her when she told him she had been raped and that belief supported her credibility. *Id.* Because the only issue in the *Whiteplume* case was whether sexual contact was consensual, we found that particular officer's statement under those particular facts undermined our confidence in the verdict and reversed. *Id.*

[¶ 14] Officer Thompson's testimony came after the testimony of the three minor girls who described Mitchell's actions with each and their observations of his actions with the other girls. L.R. testified about his observations and was followed by Officer King whose description of his investigation's progress was similar to that of Officer Thompson's description. King stated that the girls' reports of Mitchell's sexual contact had indicated to him that there had been "possible" sexual assaults. Officer Thompson then testified very briefly about his role that night. Our review indicates that his testimony was significant because it was Thompson who had talked with C.M. in the alley and had noticed that C.M. was not wearing a shirt under her coat and asked if she was wearing one; she answered no and indicated the shirt was in her coat pocket. A sheriff's deputy then testified after Officer Thompson and described Mitchell's statement to him about his activities with the girls that night. That deputy also noticed that C.M. was not wearing a shirt during her first interview, had later excused herself, and returned from the bathroom wearing a shirt.

[¶ 15] Officer Thompson is a four-year patrol officer with courtroom experience whose opinion might carry weight with a jury; however, under *Whiteplume*, this factor is not sufficient for determining reversible error occurred. The timing of his testimony was not significant since the jury had heard from other witnesses about the girls' allegations of criminal sexual contact. The four witnesses in the car with Mitchell that night provided testimony that consistently described sexual contact and solicitation. The jury had only to decide if these acts occurred; consent was not an issue. In addition to hearing fairly consistent stories about Mitchell's conduct, the jury had corroborating and physical evidence that sexual contact and solicitation occurred. The observations of each girl tended to corroborate the testimony of the others and two officers observed that C.M. was not wearing a shirt that evening soon after being with Mitchell although she had one with her. These relevant factors differ significantly from *Whiteplume*.

[¶ 16] Unlike the statement in *Whiteplume*, Officer Thompson did not testify that after investigation he had determined that the victim had been raped. Officer Thompson provided a chronological explanation of the events and his actions that night that led to a sexual assault investigation. With considerable evidence already before it, the statement was unlikely to suggest to the jury that the officer believed that the victims were telling the truth about Mitchell's guilt. We, therefore, find no violation of the rule against vouching. On similar facts, we arrived at the same conclusion in *Gomez v. State*, 2003 WY 58 ¶ 9, 68 P.3d 1177, ¶ 9 (Wyo.2003), and we find that this case should be resolved in the same manner. Affirmed.