2004 WY 33

**Edward C. MANES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–17.

Supreme Court of Wyoming.

March 25, 2004.

---

———

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General. Argument by Mr. Fetsco.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This is an appeal from the judgment finding appellant Edward C. Manes guilty of possession, manufacture, transportation, sale, or delivery of explosives in violation of Wyo. Stat. Ann. § 6–3–111(b).[1] We affirm.

### ISSUES

[¶ 2] Manes phrases the issues on appeal as:

I. Whether the verdict against appellant was fatally inconsistent and there was insufficient evidence to sustain the verdict with regard to appellant's intent to endanger the life of the confidential informant[.]

II. Whether plain error occurred when appellant's statements to police informant David Husmann were admitted into evidence, as David Husmann was acting as an agent of the State when he obtained information from appellant, while appellant was represented by counsel[.]

III. Whether there was insufficient evidence to convict appellant, as there was no evidence that the blasting caps found in appellant's house were "explosives" as that term was defined for the jury[.]

### FACTS

[¶ 3] On September 6, 2001, Manes was arrested on two counts of controlled substance violations stemming from an investigation conducted by the State of Wyoming, Office of Attorney General, Division of Criminal Investigation (DCI). The investigation included the involvement of a DCI confidential informant, Kevin Lockman. Following Manes' arrest, David Husmann contacted DCI and informed DCI that, while he was in jail with Manes, the men had discussed Kevin Lockman and expressed that they were both "unhappy" with him and that these discussions led to Manes advising Husmann

that Lockman needed to be "taken out of the picture." Further, Husmann advised DCI that while he was on work release he telephoned Manes, and the two further discussed Lockman.

[¶ 4] Subsequently, Husmann agreed to work with DCI. On October 19, 2001, Husmann met with Manes at Manes' residence wearing a wire. The wire, however, produced a poor recording of the meeting. According to Husmann, Manes asked if Husmann could get him some marijuana. The conversation then turned to Lockman. Manes expressed that he wanted to "blow-up" Lockman's vehicle to prevent Lockman from testifying against him. Manes also identified Lockman's vehicle, offered Husmann blasting caps from Manes' job at a quarry, and provided Husmann with detailed instructions of how to use a blasting cap to produce an explosion in Lockman's vehicle. Manes and Husmann also discussed Manes buying Husmann a bus ticket in order to get out of town following placement of a blasting cap on Lockman's vehicle.

[¶ 5] Two additional telephone conversations occurred between Husmann and Manes. These conversations were recorded, and Husmann and Manes again discussed the exchange of marijuana and the blasting caps. They finally agreed to meet at a local laundromat with the marijuana and blasting caps. On October 23, 2001, Husmann, wearing a wire, met with Manes in the laundromat parking lot. During the meeting, Husmann claimed to have left the marijuana behind but asked Manes about the blasting caps. Manes indicated that he had not brought the blasting caps to the meeting, although he had two blasting caps in his possession. Manes then again described in detail to Husmann how to attach a blasting cap to Lockman's vehicle to ignite an explosion. Plans were then made for the two to meet again.

[¶ 6] Immediately after this meeting, Manes was arrested, and law enforcement

---

1. Wyo. Stat. Ann. § 6–3–111(b) (LexisNexis 2003) provides, in part:

 Any person who possesses, manufactures, transports, sells or delivers to another person any explosive, improvised explosive device, or incendiary apparatus, with the intent unlawful-

ly to endanger the life or physical well being of another, to commit assault or battery or to inflict bodily harm or injury upon the person of another, or with the intent to assist another person to do the same, is guilty of a felony.

officials proceeded to Manes' residence with a search warrant. There, Manes' wife informed the officers of the existence and location of two blasting caps which were recovered from the home.

[¶ 7] On October 24, 2001, Manes was charged with solicitation of first-degree murder and possession, manufacture, transportation, sale, or delivery of explosives. After a jury trial, Manes was acquitted on the solicitation of murder charge, but was convicted of the possession charge. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] We stated in *Hughes v. State*, 2003 WY 35, ¶ 23, 65 P.3d 378, ¶ 23 (Wyo.2003) (quoting *Williams v. State*, 986 P.2d 855, 857 (Wyo.1999)):

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996). We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. *Id.* (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)).

We also recognized in *Thomas v. State*, 2003 WY 53, ¶ 14, 67 P.3d 1199, ¶ 14 (Wyo.2003), that:

> In the absence of an objection to preserve the error, review will be limited to the noticing of any plain error. *Derksen [v. State]*, 845 P.2d 1383 [ (Wyo.1993) ]; *Craney [v. State]*, 798 P.2d 1202 [ (Wyo.

1990) ]; *Muniz [v. State ]*, 783 P.2d 141 [ (Wyo.1989) ].

Finally, we clarified in *Dysthe v. State*, 2003 WY 20, ¶ 23, 63 P.3d 875, ¶ 23 (Wyo.2003), that:

> " 'Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him.' " *Mazurek*, 10 P.3d at 535 (quoting *Yetter v. State*, 987 P.2d 666, 668 (Wyo.1999)). . . . Where the plain error elements are met, we may correct the error if it " ' "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' . . ." *Johnson v. United States*, 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), cert. denied, 519 U.S. 931, 117 S.Ct. 303 [136 L.Ed.2d 221] (1996)).

## DISCUSSION

### Inconsistent Verdict

[¶ 9] Initially, Manes asserts that all the evidence introduced by the State showed that Manes intended to kill Lockman using the blasting caps and there was absolutely no evidence indicating that Manes intended some lesser harm or endangerment to Lockman. Additionally, Manes argues that because he was acquitted on the charge of solicitation of first-degree murder, it was inconsistent for the jury to have found that he was guilty of possession of explosives in violation of Wyo. Stat. Ann. § 6–3–111(b).

[¶ 10] The jury instruction concerning the charge of possessing explosives with the intent to endanger another appropriately advised the jury that in order to convict Manes of this charge, it must find that:

1. On or about the 23rd day of October, 2001

2. In Platte County, Wyoming

3. The Defendant, Edward C. Manes

4. Possessed

5. An explosive

6. With the intent, unlawfully, to endanger the life or physical well being of another, or to assist another person to do the same.

Sufficient evidence was presented at trial on each of these elements.

[¶ 11] Manes was a certified blaster with knowledge and training on how to create explosions. He was also responsible for reviewing and keeping the inventory records of explosive materials kept at his jobsite but did not have permission to remove any such explosive materials, including blasting caps, from the site. Two blasting caps, usually used in mining and agricultural activities that were capable of igniting large explosions, were found in Manes' residence. The blasting caps appear to have been taken from Manes' worksite through Manes' attempted falsification of records and theft.

[¶ 12] Evidence was also presented that Manes and Husmann discussed on a number of occasions Manes' desire that Lockman be "taken out of the picture." Additionally, Manes personally threatened Lockman and his children during an encounter with Lockman. Manes developed a plan with Husmann whereby Husmann would place a blasting cap onto Lockman's vehicle which would ignite an explosion and thereby, at minimum, severely injure Lockman. In furtherance of this plan, Manes identified Lockman's vehicle for Husmann and gave Husmann detailed instructions on how to use a blasting cap to produce an explosion in Lockman's vehicle. Manes also discussed with Husmann his defense in the event he were to be investigated as a suspect in the Lockman explosion and buying Husmann a bus ticket to get out of town afterwards.

[¶ 13] We do not find any inconsistency between the jury's acquittal of Manes of the solicitation of first-degree murder charge and its conviction of Manes under the charge of possessing explosives with the intent to endanger another. Specifically, the jury was instructed that it must find that Manes commanded, encouraged, or facilitated Husmann to commit the crime of first-degree murder

with the intent that the crime actually be accomplished ***under circumstances strongly corroborative of Manes' intent.*** A rational jury could find that Manes possessed the blasting caps with the unlawful intent to endanger the life or physical well being of Lockman, but Manes did not solicit the premeditated killing of Lockman given the required showing of evidence for that particular crime.

[¶ 14] Furthermore, we recognized in *Moore v. State,* 2003 WY 153, ¶ 16, 80 P.3d 191, ¶ 16 (Wyo.2003), that consistency in a jury's verdict is not necessary.

> In a case in which there are multiple counts, each one is treated as if it were a separate indictment. The verdict on the various counts need not be consistent. An acquittal on one count does not prevent conviction of another, even though the evidence is the same and the defendant could not have committed one crime without committing both, so long as the evidence is sufficient to support conviction on the count on which a guilty verdict was reached.

*Id.* (citing *Hankinson v. State,* 2002 WY 86, ¶ 11, 47 P.3d 623, ¶ 11 (Wyo.2002) and 3 Charles Alan Wright, *Federal Practice and Procedure* § 514 at 14–16 (1982)).

### Evidentiary Issues

 [¶ 15] Manes also asserts that, given the circumstances, plain error occurred when his statements to Husmann were admitted into evidence because Husmann was acting as an agent of the State at a time when Manes was represented by counsel.[2] In particular, Manes argues that because he was actually represented by counsel with respect to the drug related charges filed against him when Husmann spoke to him about Lockman, such statements cannot be considered knowing and voluntary and his Sixth Amendment right to counsel was violated.

[¶ 16] In *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991), the United States Supreme Court

---

**2.** The plain error standard is applicable because Manes did not object to the admission of such statements at time of trial.

stated that "[t]he Sixth Amendment right ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." A prosecution is commenced "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* Moreover, the United States Supreme Court recognized in *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481 (1985), that "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities," and "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.,* at n. 16. *In accord see United States v. Britt,* 917 F.2d 353, 361 (8thCir.1990), holding that after the right to counsel has attached with respect to one crime, the government may question a defendant in the absence of counsel as to other crimes to which the Sixth Amendment has not yet attached because to hold otherwise would be essentially to immunize a defendant from further prosecution.

[¶ 17] The State did not violate Manes' Sixth Amendment rights because the information solicited did not pertain to the pending drug related charges to which those rights had attached. Rather, Manes' statements related to a separate and distinct matter, the subject of this action. Because the Sixth Amendment right to counsel is offense specific and does not attach until a particular prosecution is commenced, Manes' Sixth Amendment rights, as they relate to this case, were not violated. Consequently, Manes' incriminating statements were properly admitted.

### Sufficiency of Evidence

[¶ 18] In his final issue, Manes contends that the State failed to present sufficient evidence that the blasting caps found in his residence were "explosives." Specifically, Manes argues that even though the testimony given at trial informed the jury that blasting caps are capable of producing an explosion, the evidence did not show under what conditions an explosion might result and if any resulting explosion would destroy property or life and limb. Hence, Manes again asserts the jury could not have found every element of the crime for which he was convicted.

[¶ 19] The instruction given to the jury defining "explosive" read as follows:

"Explosive" means any chemical or mechanical compound, substance or mixture that is commonly used or intended to cause an explosion and which contains any oxidizing and combustive units or other ingredients in such proportions, quantities or packing that an ignition by fire, friction, concussion, percussion or by detonation of any part of the compound or mixture is likely to cause such a sudden generation of heated gases that the resultant gaseous pressures are capable of producing destructive effects on nearby objects, or of destroying life or limb.

Further as indicated previously, the statute under which Manes was charged, in applicable part, makes it illegal to possess any explosive, improvised explosive device, or incendiary apparatus, with the intent to endanger the life or physical well being of another, to commit assault or battery, or to inflict bodily harm or injury upon the person of another, or with the intent to assist another person to do the same. Wyo. Stat. Ann. § 6–3–111(b).

[¶ 20] Donald Farmer, a former Cheyenne police officer and newly hired special agent with DCI, testified that he had been involved with the bomb squad of the Cheyenne police department and, as such, he was licensed as a blaster in Wyoming and a certified bomb technician through the Federal Bureau of Investigation. He further testified regarding the extensive training he received to maintain his expertise in the area of explosives. Farmer then explained his involvement in recovering the blasting caps from Manes' home and identified these blasting caps as being very effective and of high-grade quality. He further indicated that

these blasting caps had a zero millisecond delay and contained PETN, which classified the blasting caps as containing a high explosive with a detonating velocity of 8300 feet per second. Farmer explained that blasting caps are used to essentially ignite the explosion of another explosive. He related that, consistent with the instructions Manes gave to Husmann, if the blasting caps "were properly wired to the taillights of a vehicle and one to one wire, just as long as it would enable a current to pass through the cap, it would initiate the cap." Farmer explained that accidents occur with blasting caps alone and that the majority of bomb technicians that are killed in the United States are killed during disposal operations of blasting caps.

[¶ 21] Even discounting Farmer's testimony, Manes was identified as a certified blaster who was responsible for reviewing and keeping inventory of the explosives at his jobsite, but was without permission to remove any such explosive materials, including blasting caps, from the site. Manes also clearly admitted during the taped conversation that he had with Husmann in the laundromat parking lot that he attempted to falsify inventory records. Blasting caps from Manes' worksite were found in his home. Manes further displayed an appreciation of the danger posed by the blasting caps and the possible resulting legal consequences of their illegal use, stating, "I don't want to get busted either ... you're talking about a f* * *ing dude dying." Moreover, Manes gave Husmann detailed instructions on how to produce an explosion in Lockman's vehicle. Manes even discussed Husmann's defense in the event he were to be investigated as a suspect in Lockman's death. Affording the State every favorable inference which may be fairly and reasonably drawn from the evidence, the evidence presented was sufficient for a reasonable jury to find beyond a reasonable doubt that the blasting caps were explosives.

### CONCLUSION

[¶ 22] For the foregoing reasons, Manes' conviction is affirmed.